**MAZEY, Plaintiff-Appellant v. BOARD OF COUNTY COMMISSIONERS OF FRANKLIN COUNTY et, Defendants-Appellees**

Ohio Appeals, Second District, Franklin County.

No. 3486. Decided July 28, 1942.

Robert H. Hoffman, Columbus, for plaintiff-appellant.

Ralph J. Bartlett, prosecuting attorney, Henry L. Holden and Robert P. Barnhart, asst. pros. attorneys, all of Columbus, for defendants-appellees.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact from a judgment of the Common Pleas Court denying plaintiff's prayer for an injunction and dismissing his petition.

The cause was submitted in this court upon the evidence from the Common Pleas Court, together with testimony of three witnesses taken in this court.

Plaintiff's suit was to enjoin the defendants from collecting special assessments on lots, owned by plaintiff, described in the

petition and located in Zooland Addition, as numbered on the recorded plat in Plat Book No. 8, page 5-a, Recorder's Office, Franklin county, Ohio, and that said special assessments as to each lot be declared void and illegal as in violation of **Section 19, Article I of the Ohio Constitution,** in that, said special assessments exceed the value of said lots; that plaintiff's title to said property be quieted against the claims of defendant on account of said assessments and for such other and further relief as may be just and equitable.

The petition sets out the special assessments to be for sewers, water mains, joint intercepting sewers and the total special assessments as to nineteen numbered lots. The lowest assessment on any lot is $308.29 and the greatest assessment is $320.28. Issue was drawn upon the one question of the value of the lots.

The Common Pleas Court held that the plaintiff did not meet his obligation of proving that the value of the lots was so low as to support injunctive relief.

The assessment was levied in 1928 and thus the determinative question presented, both in the trial court and in this court de novo, is the fair value of the lots described in the petition as of the date of the special assessment and after the benefit thereof had accrued to the lots. The addition, known as Zooland Addition, was dedicated in 1928 and consisted of 868 lots, twenty-one of which faced on North High Street and extended east of the terminal lots to the north along Rathbone Avenue, or what was then known as the Morris County Road, and on the south along an unnamed thoroughfare. At the time that the addition was laid out it was just beyond the limits of the City of Columbus. The addition along North High Street was provided transportation by the Columbus Railway Company at thirty minute intervals during the daytime. The corner lots were approximately 35 by 120 feet. The other lots had a frontage of 40 feet with a depth of 120 feet. The closest business district to the addition was Clintonville, a distance of one mile and a half.

In the trial court the witnesses as to values were Herman H. Johnson for the plaintiff and W. K. Peck for the defendant; in this court, Elsworth Horlocker for the plaintiff and Arthur E. Daley for the defendants. All witnesses were eminently qualified. Mr. Johnson and Mr. Horlocker based their testimony upon personal knowledge and familiarity with the addition in 1928, upon the utility of the lots and upon values based upon sales of lots in an adjoining addition, Highland Garden Addition, Nos. 1 and 2. One of these plats abutted Zooland Addition immediately to the south and nearer to the City of Columbus. Mr. Johnson also, on and prior to 1928, lived in the vicinity of Zooland Addition and owned two lots therein which he transferred in 1929. Mr. Johnson was widely experienced as a subdivider of Columbus property, as a salesman and as an appraiser for the Metropolitan Life Insurance Company for a period of eight years, during which time that Company loaned a million

dollars based largely upon his appraisals. His experience in appraising lots was extended, at times he valued as many as fifteen properties a day. His testimony was predicated upon the value of plaintiff's lots in 1928, taking into consideration the factors which we have heretofore mentioned.

Mr. Horlocker, as a salesman, had marketed many lots in the Highland Garden Additions, and was familiar with the sale price of the other lots in these additions in 1928 and at a time so near thereto as to make his testimony relevant. It appeared that the lots in Highland Garden Additions were 50 to 60 feet wide and 180 to 192 feet deep, in area, about twice as large as the lots of plaintiff in Zooland Addition. Mr. Johnson testified that when prices were high, his company had sold many of these lots in Highland Garden Addition for $200.00 each. Mr. Horlocker in determining the utility of the lots stated that because of their small size they were not suitable for uses for gardening or chicken raising or the placing of residence thereon larger than a five or six room house; that in the period when they were on the market, because of their distance from the business section of Columbus, it was essential to their sales value that they have the advantage of considerable size.

Against this practical testimony, in the trial court and this court was offered the testimony of W. K. Peck, who had been for 22 years engaged in the general real estate business making sales, leases and appraising property. He had made extensive appraisals of Columbus real estate and also has taken special course in appraisal of real property at Tulane University and University of Pennsylvania and held a certificate of senior membership in the American Institute of Real Estate Appraisers. In this court, the defense offered Arthur E. Daley, a realtor appraiser of wide experience, who had supplemented his practical knowledge with special course in Tulane, Yale and Columbia Universities. Both of these witnesses testified as experts upon examination of the property made comparatively recently with respect to the time of hearing and did not have the advantage of personal knowledge of Zooland Addition or values of lots there and in its immediate vicinity in and about 1928. Mr. Peck brought to his opinion many elements touching future possibilities affecting the values of the lots under consideration. He stated that he considered a great many things, that his appraisal "is based as of 1928 on the economic value of the present worth as of 1928 of the future benefits at that time of the subject property." In the first instance, he would not concede that general market conditions were to be considered in determining the value of the lots; that "change in economic conditions tends to change price but has nothing to do with utility and scarcity which are the fundamental underlying values". He admitted that it was a mistake to lay Zooland Additions out in 40 foot lots but suggested that if a 40 foot lot wasn't quite enough a purchaser should buy two lots.

Mr. Daley had made a complete survey of the addition and the development of improvements therein, not only in 1928, but subsequently thereto and up to the time of hearing. He was conversant with the fact that many of the lots had been utilized for the purpose of building defense houses thereon. He testified that of the total number of lots at the time of hearing in this court, 65% had been built up. Thereafter, when plaintiff had made an actual computation of the improvements in the addition it was stipulated that this percentage should be decreased to 37% and that one-half of the total number of houses built in the addition were known as defense houses and erected recently under authority of Federal Housing.

Mr. Johnson valued one group of the lots at less than $100.00, the others at $50.00. Mr. Horlocker valued lots 52, 171, 172 at $100.00 each; 57, 58, 60, 61, 178, 179, 180, 191, 192 and 438, $90.00 each; 217, 242 and 243, $70.00 each; 131, 250 and 251, $50.00 each. Mr. Peck valued thirteen of the lots at $400.00; two at $325.00; two at $300.00; and two at $250.00. Mr. Daley valued thirteen of the lots at $450.00 and six at $350.00. This testimony of four eminent appraisers is at such variance as that we, as was the trial court, are put to the necessity of reconciling widely divergent figures.

It is our judgment that the best criterion upon which the values fixed by the experts in this case may be supported is found in the worth of the lots in the additions adjoining ██ Zooland Addition, namely, Highland Garden Additions, and the value of many of these lots, at least, is determinable by the prices at which they sold in a market which must have been better than that of 1928. It is conceded by all witnesses that there was no market whatever in 1928 and no witness testified to any sale that was made of the Zooland Addition lots in 1928. Upon the whole, it is our judgment that the lots cannot, as of 1928, be said to be of the values fixed by the witnesses for the defense.

The petition pleads that the value of the respective lots after the improvements had been made were as follows:

| Lot | Value | Lot | Value | Lot | Value |
|-----|-------|-----|-------|-----|-------|
| 52 | $260. | 171 | $250. | 217 | $110. |
| 57 | 180. | 172 | 250. | 242 | 70. |
| 58 | 260. | 178 | 180. | 243 | 70. |
| 60 | 180. | 179 | 180. | 250 | 70. |
| 61 | 180. | 180 | 180. | 251 | 70. |
| 131 | 80. | 191 | 180. | 438 | 140. |
| | | 192 | 160. | | |

It may be noted that Mr. Peck valued several of the lots at $250.00 and one at $300.00. As to all of these lots, inasmuch as the cost of improvement was more than $300.00, the plaintiff would have been entitled to relief in the trial court. Inasmuch as the

plaintiff has alleged the values of the lots to be as set out in the petition, he could not be heard to assert that they were of lesser value, although his witnesses fixed their value at a lesser sum than plead. We hold that no one of the lots is shown to have been of the value of the amount assessed against them by reason of the improvements. In the main, the values set out in the petition are about as we would fix them under the evidence, although, we would have reduced some of those set out at the larger amounts and would increase the four lots valued at $70.00 and the one lot at $80.00 to $100.00.

This addition at the time the assessment was laid upon it was to all intents and purposes farm land. There were but very few buildings on it. The lots were so restricted in size as to remove practically all of their utility value because of their location. The very element which would interest prospective buyers to purchase the lots was removed by the method of platting. The experts who testified for the defense were put to the necessity of relying upon hypothetical and theoretical value, whereas the plaintiff's witnesses had the advantage of the practical viewpoint, both as to familiarity with the addition and as to actual sales of comparable lots in the same vicinity and about the time the assessments were laid.

It is somewhat difficult to divorce the impression that the lots were in 1928 of greater value than we have fixed in view of the fact that many of them have been adapted to the use of defense houses and appraised at substantial figures. Such appraisals are recognized as generally high. We doubt if this testimony was competent. However, we must not lose sight of the fact that for years prior to 1928 real estate values were booming, as were market values of all products. Men who were best qualified to fix values did not foresee the panic which came on to us a very short time after 1928. With respect to the present market economists are not so sanguine. It is easy to visualize a marked slump in real estate values in the post war period. If we are to consider present values which admittedly are high, as reflecting the worth of the lots in question in 1928, then we could properly consider future possibilities which may affect their value by the downward trend.

We have restricted our consideration largely to that testimony which relates to the value of these lots in 1928 and to the elements which, in our judgment, are the most reliable in determining values. It is true that sales of particular properties do not fix the value of the lots in question, but they very properly furnish a basis upon which, in part, a witness may fix values.

At the hearing in this court the testimony of Thomas Graham, Deputy County Auditor, was offered respecting the sale of many of

**360** 

 █ the lots in Zooland Addition at omitted and forfeited land sales. The court accepted this testimony subject to its competency and now determines that it is incompetent and neither it nor the exhibits in connection therewith will be accepted.

Finding and judgment for plaintiff in conformity to this opinion.

BARNES, J., concurs.
GEIGER, P. J., dissents.